## Ruth *versus* Katterman et al., Administrators.

1. A policy of insurance in favor of one who has no interest in the life of the assured, either as a near relative or as a creditor, is speculative and a wager on the life of the assured. As against the representatives of the estate of the assured, the said beneficiary or his assignee can hold of the proceeds of the policy only the amount which he has expended for fees and expenses.

2. Gilbert *v.* Moose, 8 Out., 74, followed.

3. The legal representatives of the estate of the assured may, in an action of assumpsit, recover from the beneficiary the amount received by him as the proceeds of the policy, less the amount expended by him for the policy. An assignment of all their interests in the policy to the beneficiary by all the heirs but one, a minor, and a settlement with the company by the widow of all her claim under the policy, is not evidence in said action to prevent recovery.

4. The Orphans' Court, in the distribution of the estate of the assured, has full power to judge between the widow and heirs and the said beneficiary, and award to him the amount justly due him.

March 3d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks County :* Of January Term, 1886, No. 84.

Assumpsit by Mary Katterman and Frank Katterman, administrators of Benjamin Katterman, deceased, against James Ruth, brought November 6th, 1883. Plea, non-assumpsit, payment, set-off with leave, etc.

On the trial, before SASSAMAN, J., the following facts appeared :

Benjamin Katterman, on the 24th day of August, 1874,

[Ruth *v.* Katterman.]

presented two applications for membership in the United Brethren Mutual Aid Society of Lebanon, Pa. Both applications were approved on the 5th day of September, 1874, and on the same day two certificates of membership were issued, one in the sum of $2,000.00, and the second in the sum of $3,000.00. At this time he was already well advanced in years and poor. He had a minor son Thomas, and desiring to make some provision for him, it was stipulated in the certificates that the sum of $100 should at his death be paid out of the proceeds of each of the said certificates to said son Thomas. The beneficiary in both of said certificates was John N. Levy, who forthwith assigned his interest in the same to James Ruth. James Ruth paid all fees and costs of obtaining said certificates and all assessments made upon the same during the lifetime of Benjamin Katterman, up to the time of his death. He died on the twentieth day of March, 1882. The amount thus paid by James Ruth to the Society was $1,951.40. Nothing was paid by Benjamin Katterman, his wife, or any of his children. Immediately after the death of Benjamin Katterman there was a protest entered on the part of some of the heirs to the payment by the Aid Society of the proceeds of the two certificates to James Ruth. A compromise was thereupon effected between Frank Katterman, Anna Wise, Agnes Foreman, Tilda Smith and George Wise (being all the heirs except the widow and the minor son) and John Levy, who acted for James Ruth.

The result of said compromise was an assignment of all their right, title and interest in the two certificates to John Levy, the consideration being $363.

On the eighteenth day of April, 1882, the Register of Wills granted letters of administration to Mary Katterman, the widow, and Frank Katterman, a son, upon the estate of Benjamin Katterman, deceased.

The widow interposed and settled with the company, receiving from them for her claim $500.

The Society subsequently paid to the guardian of Thomas Katterman the sum of $200, as stipulated in the certificates. After satisfying all the demands of the heirs of Benjamin Katterman, deceased, under said certificates of insurance, the balance of $3,794.60 was, on the twenty-fourth day of August, paid to James Ruth. This action was brought by the administrators of Benjamin Katterman, deceased, against James Ruth, to recover from him the difference between the amount received by him from the Society and the amount he had paid in. This claim was resisted by James Ruth, for the following reasons:

1. Because, after the death of Benjamin Katterman, at his

[Ruth v. Katterman.]

(James Ruth's) request, and by payment of his (James Ruth's) money, an assignment of all the right, title and interest of Frank Katterman, Annie Wise, Agnes Foreman, Tilda Smith and George Wise in the two certificates was made to John N. Levy, acting for him (James Ruth).

2. Because the widow, in consideration of $500 paid her, released all claim to any and all moneys due upon the two certificates of insurance, and that said $500 was paid as a compromise.

3. Because Benjamin Katterman, at the time of his death, was indebted to no one, and that therefore his heirs had the right to assign their interest in said certificates to a third party for whatever consideration they chose, be the same more or less than the amount that would come to them out of said certificates as heirs of Benjamin Katterman, deceased.

During the trial the defendant made the following offer of evidence:

The defendant now proposes to offer in evidence the receipt dated August 24th, 1882, for $500 given to the U. B. Mutual Aid Society, signed by Mary Katterman, who is one of the administrators of Benjamin Katterman, deceased, and also one of the plaintiffs in this case, said receipt being attached to the policy of insurance already admitted by the court; to be followed by an assignment, date May 1st, 1882, of Frank Katterman, also one of the administrators of Benjamin Katterman, deceased, and one of the plaintiffs in this case: Annie Wise, Agnes Foreman, Tilda Smith and George Wise being the heirs and representatives of Benjamin Katterman, the consideration being $363.00, of all their right, title and interest in the two policies specified in this case. To be followed by evidence showing that the sum of $363.00 was paid to the parties above specified in full of all their legal right, title and interest under these two policies. To be followed by the two receipts indorsed upon the backs of the respective policies, dated February 20th, 1883, both of the same date and of the same amount. Both receipts are under seal and witnessed by T. G. Spangler. To be followed by evidence showing that the estate of Benjamin Katterman, at the time of his death, was not indebted in the sum of one dollar. This is offered for the purpose of showing that the two administrators of this estate, having signed papers by which their respective rights were transferred to other parties, are now estopped from claiming this money in this suit, and also for the purpose of showing that the parties plaintiff have no status in this case to recover from the defendant.

Objected to by plaintiff's counsel.

1. Because the receipt in question is not to James Ruth,

[Ruth *v.* Katterman.]

the defendant in this suit, but to the U. B. Mutual Aid Society of Pennsylvania, not a party to this transaction.

2. Because this money was the money of the estate of Benjamin Katterman.

3. The alleged settlement was not with the administrators as such, who were the only parties authorized to make it, and receive the money.

4. There was a minor child of Benjamin Katterman in life at the time, whose interests were involved in this matter, and whose guardian did not join in this transaction.

5. Because an administrator's account cannot be settled in this matter.

And so far as this assignment is concerned that is an assignment of nothing to nobody; no name of an assignee appearing in the assignment.

Objections sustained and bill sealed for the defendant. (First assignment of error.)

The defendant's counsel propose to show by the witness on the stand that in settling policies of insurance with policy holders it is the custom to allow an equated interest upon all moneys paid into the association in the shape of assessments, or in other words six per cent. interest on the whole amount for one half of the time.

The plaintiff's counsel:   We object to that.

BY THE COURT.   I do not see how that would be evidence under any circumstances.   I would have to see the relevancy of it before I would admit it.   I think this offer must be rejected.   Bill sealed for the defendant.   (Second assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

It is allowed that when one has paid the assessments and dues, to deduct the amount of the assessments and dues from the amount that he gets.   In this case he has received only $3,794.60 from the company on the two policies, and has paid in $1,951.40.   Now your verdict would have to be for the difference between these amounts . . . to wit: $1.843.20, for which sum you will render your verdict.   (Third assignment of error.)

Verdict for $1,843.20 and thereupon judgment, whereupon the defendant took this writ assigning for error the rejection of his offers of evidence and that portion of the charge above set out.

*Hiram Y. Kaufman* (*H. V. Schrader* and *Frank R. Schell* with him), for plaintiff in error.—All of the parties in interest had for a valuable consideration transferred, assigned and set

over their entire interest in these certificates to another. It was a settlement (a good one they no doubt thought) in which the administrators and all the heirs had joined. It was after this assignment receipt and settlement had been effected that there appeared the decision in the case of Gilbert v. Moose, 8 Outerbridge, 74. It was then that the idea of a suit against James Ruth occurred to these administrators. James Ruth set up as a defence a settlement with all the heirs. Now it has been well settled in Whiteside v. Whiteside, 8 Harris, 473; Dundas Appeal, 23 P. F. S., 474, and numerous other decisions, that "The Orphans' Court alone has authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it." But here the entire estate of Benjamin Katterman, deceased, for these certificates were substantially all he had, had been assigned to James Ruth, and for a valuable consideration. The heirs, among whom were the administrators themselves, had a perfect right to make such assignment. We have never yet heard that an heir had no right to assign his interest in an estate, or in any particular part of an estate; in fact it frequently happens that heirs assign their interest in estates whether the same be reduced to a certainty or whether it be contingent.

The question of interest has been passed upon by the lower courts and this court. In the case of Corson v. Garnier, 15 W. N. C., 451, the master decided that the beneficiary (who had no insurable interest) could take out of the fund the cost of the policy and subsequent premiums together with interest on the same. In Downey v. Hoffer, 16 W. N. C., 184, Boas obtained an insurance upon his own life for $2,000; he kept up the policy for a time, and on July 13th, 1878, in consideration of $65 assigned it to Downey, who was no creditor or blood relative of Boas. In a case stated the court below entered judgment, granting Downey leave to take out of court $715.53, made up of the $65 paid for policy, $558.50 assessments and interest from July 13th, 1878, to April 1st, 1884. This case was subsequently affirmed by this court. The credit of Mr. Ruth would then have been $1,951.40, together with interest on the same, to wit: $463.11, amounting to $2,414.51. For the court to instruct the jury otherwise was error.

*William H. Livingood* (*Bassler Boyer* with him), for defendants in error.—Where administrators have been appointed, and there are several heirs, among them a minor child, a question of distribution arises, and a subsequent arrangement by a debtor to the estate with some of the heirs, is no bar against the right of the administrator to recover: Lea v. Hopkins, 7 Barr, 496, 497; Ebbs v. Com., 11 Pa. St., 376, 378, 380;

Weaver *v.* Roth, 105 Pa. St., 413; Walworth *v.* Abel, 2 P. F. S., 370; McLean's Ex'rs *v.* Wade, 3 P. F. S., 150; Edwards *v.* Hoopes, 2 Wh., 426.

The assignment relied upon carried nothing with it—and could not impair the right of the administrators to recover: U. B. Mut. Aid Society *v.* Miller, 11 Out., 164; Gilbert *v.* Moose's Adm'rs, 8 Out. 74.

The authorities cited in support of the several assignments of error, are wholly inapplicable. Whiteside *v.* Whiteside, 8 Harris, 473, and Dundas' Appeal, 23 P. F. S., 474, clearly point the right and duty of the administrators in this case to proceed and recover.

As to the question of interest on payments: In Corson *v.* Garnier, cited, no question of interest for money was raised. The only question was as to the right of the nephew to retain the money.

In Downey *v.* Hoffer, there was no question as to interest. The money there was in court; in the case stated the parties had agreed on the amount to be deducted, if the entire fund was not to be allowed to Downey. The main questions there were as to the effect of good faith and an attempt to overthrow Gilbert *v.* Moose, and the subordinate one of the claim made by Downey to be allowed for payments made by Boas (the risk), before the assignment. No question or controversy as to interest, and this court merely approved of and affirmed the ruling of the court below.

Mr. Justice GORDON delivered the opinion of the court, March 29th, 1886.

From the statement of this case, as furnished to us by the counsel for the plaintiff in error, defendant below, we gather the following facts, which are the controlling features of the contention in hand. On the 5th of September, 1874, the United Brethren Mutual Aid Society of Lebanon, Pennsylvania, issued two certificates of membership, or policies, on the life of Benjamin Katterman, the one for two thousand dollars, and the other for three thousand. The beneficiaries therein mentioned were one John Levy and Thomas Katterman, a son of the assured, the latter, however, only to the amount of one hundred dollars in each policy. Eighteen days after the date of these certificates they were assigned by Levy to James Ruth, who paid all the costs and fees, together amounting to the sum of nineteen hundred and fifty-one dollars and forty cents. On the 20th of March, 1882, Katterman died. Immediately upon his death his heirs notified the Society of their protest against the payment of the policies to Ruth. Thereupon there appears to have been a compromise

between him and four of the heirs, which resulted in an assignment of their several interests to the defendant in consideration of the sum of three hundred and sixty-three dollars. The widow also interposed, and received five hundred dollars from the Society, in full payment of her claim. After deducting these several sums of money, together with the two hundred dollars belonging to Thomas Katterman, a minor heir, there were paid over to Ruth three thousand and ninety-four dollars and sixty cents. This sum, less assessments and expenses, paid in the taking out and maintaining the policies, is now claimed by the administrators of the decedent's estate. The learned judge of the court below held that these policies, as to Levy and Ruth, who had no interest in the decedent's life, either as near relatives or creditors, were but speculative, and mere wagers on Katterman's life, and that, under the doctrine of Gilbert *v.* Moose, 8 Out., 74, and similar cases, the defendant could hold of their proceeds as against the representatives of Katterman's estate, only the amount which he had expended in the way of fees and expenses. The position thus assumed by the Common Pleas is one that is too well settled to require discussion, nor can we discover that it was seriously controverted by the learned counsel for the defence. Complaint, however, is made that the court refused to admit in evidence and submit to the jury the assignments of the four heirs, and the settlement with the widow. But we cannot see what legitimate purpose such admission could have subserved. Had all the heirs, supposing them to have been, *sui juris*, released to Ruth, together with the widow, this might have operated, under the doctrine of Walworth *v.* Abel, 2 P. F. S., 370; Weaver *v.* Roth, 9 Out., 409, and similar cases, as an equitable defence.

But one of the heirs was a minor, and neither did nor could join in the alleged assignment, as, therefore, the estate must at all events go to distribution, it certainly would have been improper for the Common Pleas to have attempted to anticipate and forestall, even in part, the action of the Orphans' Court. Indeed, it would have been impossible so to do, for the expenses of administration not having been ascertained, the amount to which the defendant, by virtue of his assignments, would be entitled, could not, in this action, be certainly determined. Nor are his rights at all affected by the judgment in this case, for, on final settlement of the estate, the Orphans' Court has full power to judge between him and the widow and heirs, and award to him that which is justly his due. We must, therefore, dismiss the first and third assignments of error. Nor can we sustain the second. The complaint therein contained we give as follows: "The court erred in rejecting

2 Amerman—17

[In re Opening of Spring Street.]

the offer of the defendant, which is as follows: The defendant's counsel proposed to show, by the witness on the stand, that, in settling policies of insurance with policy holders, it is the custom to allow an equated interest upon all moneys paid into the association in the shape of assessments, or, in other words, six per cent. interest on the whole amount for one half the time." The court could not perceive the relevancy of this offer, hence rejected it. As we are unable to understand this proposition, we cannot say the court did wrong in not adopting it. The offer is not to prove a fact, as that the defendant had to pay something for which, in this suit, he was entitled to a credit, or that the company allowed him a rebate with which he should not have been charged, neither was the court asked to hold that he should be allowed interest on the money which he actually did pay, but that, "in settling policies of insurance with policy holders, it is the custom to allow an equated interest upon all moneys paid into the association in the shape of assessments." Certainly the question concerned not a general custom of insurance companies, or of this particular company, but rather, what was the fact as to this transaction? If, indeed, he was allowed the rebate here mentioned, it was an easy matter for him to have proved it, and proof of a custom would not have availed him unless he could show that it was applied to his case. It follows that his offer was altogether barren and useless, and the court did well to reject it.

The judgment is affirmed.